UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIGGS & STRATTON CORPORATION, et al.  No. 5:13-CV-316
                                                          (LEK/ATB)
        Plaintiffs,

  v.

CHONGQING RATO POWER CO., LTD., et al.,

        Defendants.
_____

MATTHEW M. WOLF, ESQ., et al., for Plaintiffs
JEFFREY M. OLSON, ESQ., et al., for Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

     Presently before this court is defendants' letter motion dated October 4, 2013 (Dkt. No. 75) seeking to bifurcate the issue of patent damages from liability, and to stay damages discovery pending resolution of liability issues. The plaintiffs have opposed the motion by letter brief dated October 25, 2013 (Dkt. No. 76), and the defendants filed a brief reply (Dkt. No. 77). After considering the written submissions of the parties, and for the reasons set forth below, this court denies the motion to stay damages discovery. The defendants' motion to bifurcate liability and damage issues at trial is also denied, but without prejudice to renewing that motion before the presiding District Judge following the completion of discovery.

## I. **Background**[1]

Plaintiffs Briggs & Stratton Corporation and Briggs & Stratton Power Products Group (collectively, "plaintiffs"), manufacturers of "Ferris"-branded lawn mowers, initiated this patent infringement action against Defendant Chongqing RATO Power Company and its subsidiaries, Defendants RATO North America and Denver Global Products (collectively, "defendants"), manufacturers of an allegedly infringing lawn mower named "RAVEN." (Compl., Dkt. No. 1). Plaintiffs' Ferris-branded lawn mowers feature an independent suspension enabling the two front wheels to move over terrain independently of each other. Plaintiffs purport to hold many patents relating to mower suspensions, but assert in this action multiple claims relating to two patents–U.S. Patent No. 6,510,678 (hereinafter the "678 Patent") and U.S. Patent No. 7,107,746 (hereinafter the "746 Patent"). (*See* Pls.' Asserted Claims and Infringement Contentions, Dkt. No. 75 at 17-38). As set forth in their complaint, plaintiffs seek, among other things, injunctive relief and damages of "no less than a reasonable royalty." (Dkt. No. 1 at 7-8).[2]

On April 12, 2013, plaintiffs moved for a preliminary injunction, based on the alleged infringement of two particular claims by the defendants–claim 39 of the 678

---

[1] Additional background regarding this action is set forth in Senior U.S. District Judge Lawrence E. Kahn's Memorandum-Decision and Order denying plaintiffs' motion for a preliminary injunction. (Dkt. No. 70). *See Briggs & Stratton Corp. v. Chongquing* [sic] *Rato Power Co.*, 5:13-CV-316 (LEK/ATB), 2013 WL 3972391 (N.D.N.Y. July 23, 2013). This decision and order presumes familiarity with Judge Kahn's prior Memorandum-Decision and Order.

[2] The Civil Case Management Plan also suggests that plaintiffs are seeking damages of lost profits. (Dkt. No. 71 at 4).

2

Patent,[3] and claim 6 of the 746 Patent.[4] (Dkt. No. 27). In the Memorandum-Decision and Order denying the motion, Judge Kahn found that defendants raised a substantial question as to the validity of claim 39 of the 678 Patent, because the claim failed to satisfy the written-description requirement of 35 U.S.C. § 112 ¶ 1 (Dkt. No. 70 at 10-14) and on the grounds of obviousness under 35 U.S.C. § 103(a) (Dkt. No. 70 at 14-24). However, Judge Kahn rejected defendants' stated basis for challenging the validity of claim 6 of the 746 Patent and concluded that plaintiffs "have raised at least a sufficiently serious question going to the merits of their claim that the RAVEN infringes claim 6"[5] (Dkt. No. 70 at 31-33). Nonetheless, Judge Kahn denied the preliminary injunction, finding that plaintiffs did not sustain their burden of proving irreparable harm. (Dkt. No. 70 at 37-41).

Defendants have asserted a number of counterclaims, including false advertising and unfair and deceptive trade practices under the Lanham Act (15 U.S.C.

---

[3] Claim 39 relates to a method for preventing full spring compression of the independent suspension of a mower. (*See* Dkt. No. 70 at 38 n.18). Plaintiffs' motion for a preliminary injunction described this claim as follows: "Claim 39 of the '678 patent is generally directed to a method for manufacturing a lawn mower with independent suspension. The claim requires coupling at least two wheels to a lawn mower frame via respective independent suspensions. Each independent suspension has a spring and a "load compensation adjuster"–*e.g.*, a shock absorber–that is positioned inside the coil of the spring. The load compensation adjuster is configured such that it prevents the spring from reaching full compression under high loads." (Dkt. No. 27-1 at 13).

[4] Plaintiffs described this claim as follows: "Claim 6 of the '746 patent is generally directed to a lawn mower product having independent suspensions. Each wheel on the left and right of the mower is pivotably coupled to a beam in the center of the mower's frame, *e.g.*, via a wishbone suspension arm. The distance from the pivots of each suspension arm to the centerline of the mower is 0% to 20% of the track width of the mower." (Dkt. No. 27-1 at 13).

[5] That alleged infringement of claim 6 relates to the RAVEN's use of "central longitudinal beams and pivotable coupling." (See Dkt. No. 70 at 41).

§ 1125(a)), and false advertising under New York, North Carolina, and Wisconsin law. (Dkt. No. 68 at 7-12). With respect to their counterclaims, defendants seek injunctive relief, as well as "an award to Denver of all profits, sums and gains received by [plaintiffs] of any kind made as a result of their false advertising" and "an award of all damages sustained by Denver by reason of [plaintiffs'] acts of false advertising." (Dkt. No. 68 at 13). Plaintiffs' letter brief noted that defendants' motion to bifurcate did not reference its counterclaims and argued that the false advertising counterclaims would generate discovery that substantially overlapped with discovery relating to patent infringement damages. (Dkt. No. 76 at 1, 2). Defendants' reply stated that, "if the Court grants [the] motion to bifurcate, [Denver] will agree to accept a nominal damage award of $1 should it prevail on its false advertising counterclaims (in addition to whatever injunctive relief and/or costs and fees that may be awarded)." (Dkt. No. 77 at 1).

## II. <u>Applicable Law</u>[6]

Plaintiffs' motion implicates Rule 42(b) of the Federal Rules of Civil Procedure, which provides, in pertinent part, that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims . . . ." Fed. R. Civ. P. 42(b); *see also Amato v. City of Saratoga Springs, New York*, 170 F.3d 311, 316 (2d Cir. 1999). The decision of

---

[6] The statement of applicable law draws heavily on Magistrate Judge Peebles' Report-Recommendation in *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974 (NAM/DEP), 2006 WL 2739678, at *4-5, 2006 U.S. Dist. LEXIS 97053, at *11-13 (N.D.N.Y. Aug. 15, 2006) (Report-Recommendation), *adopted*, 2006 U.S. Dist. LEXIS 68711 (N.D.N.Y. Sept. 25, 2006).

4

whether to bifurcate a trial "is a matter within the sound discretion of the trial court." *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988). The burden of demonstrating that bifurcation is appropriate rests with the party seeking such relief. *Aldous v. Honda Motor Co., Ltd.*, 94-CV-1090 (TJM), 1996 WL 312189, at *1 (N.D.N.Y. May 30, 1996).

When exercising its discretion to order such relief, the court must consider "whether bifurcation would (1) avoid unfair prejudice to a party, (2) provide for convenience, and (3) expedite the proceedings and be more economical." *Carson v. City of Syracuse*, 92-CV-777 (NJM), 1993 WL 260676, at *2 (N.D.N.Y. July 7, 1993); *see also Witherbee v. Honeywell, Inc.*, 151 F.R.D. 27, 29 (N.D.N.Y. 1993). In order for separate trials in a single case to be appropriate, the issues to be bifurcated must be distinct; bifurcation is not suitable where the evidence pertaining to the issues to be separately tried can reasonably be expected to overlap. *Aldous v. Honda Motor Co., Ltd.*, 1996 WL 312189, at *1-2; *see also Hanlin Group, Inc. v. Village of Solvay, New York*, 88-CV-773 (TJM), 1990 WL 164694, at *1 (N.D.N.Y. Oct. 15, 1990) (denying bifurcation in order to promote efficiency in light of evidentiary overlap).

In support of their motion to bifurcate damage proceedings, defendants rely heavily on the recent *en banc* decision of the Federal Circuit in *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316 (Fed. Cir. 2013), which upheld the decision of a Delaware district judge who has concluded that bifurcation "is appropriate, if not necessary, in all but exceptional patent cases. (Defs.' 10/4/13 Ltr. Brf. at 3 (citation omitted)). However, notwithstanding dicta in the *Bosch* decision cited by defendants,

the Federal Circuit still recognizes that district judges "are best positioned to make [the bifurcation] determination on a case-by-case basis." *Id.* at 1319-20 (a district judge "may decide, for example, for reasons of efficiency due to the commonality of witnesses or issues in any particular case, that bifurcation is not warranted").

Moreover, despite the dominant role of the Federal Circuit in developing the law in patent cases, the decision whether to bifurcate damage proceedings is determined by the law of the circuit in which the district court is located. *See, e.g.*, *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1333, 1335 (M.D. Fla. 2006) ("[b]ecause bifurcation of liability and damages is not unique to patent law, the law of the Eleventh Circuit applies to this issue") (citing *Wexell v. Komar Industries, Inc.*, 18 F.3d 916, 919 (Fed. Cir. 1994) ("[t]his court applies the law of the pertinent regional circuit when the precise issue to be addressed involves an interpretation of the Federal Rules of Civil Procedure")). The prevailing view in the Second Circuit still seems to be that bifurcation of damages in patent cases is "the exception, not the rule." *See, e.g., Plew v. Ltd. Brands, Inc.*, 08 Civ. 3741, 2012 WL 379933, at *9, 2012 U.S. Dist. LEXIS 14966, at *25 (S.D.N.Y. Feb. 6, 2012); *WeddingChannel.com. Inc. v. The Knot, Inc.*, 03 Civ. 7369(RWS), 2004 WL 2984305, at *1, 2004 U.S. Dist. LEXIS 25749, at *3 (S.D.N.Y. Dec. 23, 2004); *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, 247 F.R.D. 63, 67 (E.D.N.Y. 2007).

A decision that patent liability and damage issues should be bifurcated for trial purposes does not necessarily resolve the issue of whether damages discovery should be stayed at the outset. *See, e.g., Foseco, Inc. v. Consolidated Aluminum Corp.* 851 F.

6

Supp. 369, 371 (E.D. Mo. 1991) (bifurcating trial on liability and damage issues, but declining to bifurcate discovery "[i]n the interest of judicial economy and expediency"). *See also Enzo Life Scis., Inc. v. Digene Corp.*, 02-212, 2003 WL 21402512, at *4-5, 2003 U.S. Dist. LEXIS 10202, at *13-18 (D. Del. June 10, 2003).[7]

### III. Analysis

This court finds that discovery on damages in this case should not be stayed. I also conclude, at this early stage of the proceedings, that the defendants have not sustained their burden of demonstrating that a bifurcation of trial would be appropriate. However, after further pretrial proceedings, the presiding District Judge may, in his discretion, revisit the issue of whether a bifurcation of liability and damage issues at trial would be warranted.

### A. Defendants' Likelihood of Prevailing on Liability

In support of their motion, defendants argue that Judge Kahn's preliminary analysis of the merits of plaintiffs' claims "suggest that [plaintiff] is vulnerable to losing on one or both patents" and that bifurcation would avoid the waste of substantial resources addressing damage issues if the defendants prevail as to liability.

---

[7] While defendants described the holding in *Enzo* case as "bifurcating patent damages from liability" (Dkt. No. 75 at 2), *Enzo* actually held that a trial would be bifurcated to separately address patent infringement claims, validity defenses, and counterclaims. (*Enzo*, in dicta, did state that "[t]ypically, courts bifurcate patent cases into liability and damage trials." *Id.*, 2003 WL 21402512, at *5, 2003 U.S. Dist. LEXIS 10202, at *16.) However, the *Enzo* court denied a motion to stay discovery on the counterclaims, finding that "a more difficult question" than the issue of bifurcation of trial. *Id.*, 2003 WL 21402512, at *5, 2003 U.S. Dist. LEXIS 10202, at *17-18 (while the counterclaims may be mooted or simplified depending on the outcome of the patent issues, this factor is outweighed by the importance of judicial efficiency and fairness in resolving the counterclaims).

(Defs.' 10/4/2013 Ltr. Brf. at 2). In denying plaintiffs' motion for a preliminary injunction, Judge Kahn found that the defendants raised a substantial question as to the validity of claim 39 of the 678 Patent. However, as Judge Kahn's decision noted, "[a]t the preliminary-injunction stage, . . . a defendant need only demonstrate vulnerability by raising a 'substantial question concerning either infringement or validity,' which 'requires less proof than the clear and convincing showing necessary to establish invalidity' at trial." (Dkt. No. 70 at 5 (citations omitted)). Moreover, plaintiff raised only one claim with respect to the 678 Patent in connection with its preliminary injunction, but is pursuing other claims in connection with that patent in this case which Judge Kahn has not yet addressed. (*See* Pls.' Asserted Claims and Infringement Contentions, Dkt. No. 75 at 17-25).

Judge Kahn also found that plaintiffs "raised at least a sufficiently serious question going to the merits of their claim that the RAVEN infringes claim 6" of the 746 Patent. (Dkt. No. 70 at 33). The District Court cautioned that plaintiffs failed to show "where the longitudinal pivot axes of the RAVEN's wheels are located," and concluded "without a proper analysis of the kinematics involved in the pivoting of the RAVEN's wheels," the court could not determine with certainty whether the RAVEN embodied the "central" requirement of the "central longitudinal beam" limitation. (Dkt. No. 70 at 33).[8] However, plaintiff's patent contentions (Dkt. No. 75 at 29) provide further information about the location of the pivot axes on the RAVEN mower

---

[8] "This necessarily means that Plaintiffs have failed to demonstrate that the beams are placed so that the pivot axes are spaced, as required by claim 1[from which claim 6 depends], 'between about 0% and about 20% of the track width.'" (Dkt. No. 70 at 33).

8

that tends to confirm Judge Kahn's "understanding" that the pivot axes are indeed centrally located, as required to embody the relevant patent claims (Dkt. No. 70 at 33).[9] Hence, it appears, based on Judge Kahn's preliminary findings, that plaintiffs have demonstrated a reasonable likelihood of success on the merits of their infringement claim with respect to claim 6 of the 746 patent.

Judge Kahn's preliminary review of some of plaintiffs' claims does not suggest that the defendants will necessarily prevail on all liability issues in this case. At this early stage of the proceedings, the defendants have not made an adequate showing with respect to the merits of their position on liability to support a stay of discovery on damages or bifurcation at trial. *See, e.g., Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 09-C-0916, 2010 WL 3521567, at *1, 2010 U.S. Dist. LEXIS 98573, at *4-5 (E.D. Wis. Sept. 7, 2010) (denying bifurcation because, based on the court's prior rulings, "it does not appear improbable that the jury will have to address damages in some form"); *Real v. Bunn-O-Matic Corp.,* 195 F.R.D. 618, 623 (N.D. Ill. 2000) (where there is a "possibility, given the Court's previous rulings" that plaintiff will prevail on liability issues, "this Court will not preclude a plaintiff from proceeding in the normal course of a trial and present[ing] evidence on both liability and damages merely because a defendant may ultimately prevail"). After further discovery and other pretrial proceedings develop more information about the merits of plaintiffs' claims, the presiding District Judge may decide to reconsider whether

---

[9] Whether plaintiff can ultimately prove that the RAVEN's pivot axes are centrally located may depend on further kinematic analysis (see Defs.' 10/4/2013 Ltr. Brf. at 6) and on how certain claims are ultimately construed (see Pls.' Ltr. Brf. at 5-6).

9

bifurcation of the trial is appropriate.

### B. Complexity of Damages Analysis and Overlap with Liability Issues

Defendants also argue that proceedings relating to damages in this case will be particularly complex because two plaintiffs have asserted multiple claims with respect to two patents embodying "a distinct and minor feature of a far larger machine." According to the defendants, "the damage analysis will require separating the value of the patented features from the unpatented features, which the Federal Circuit acknowledges is a "difficult and error prone task." (Defs.' 10/4/2013 Ltr. Brf. at 1-2, *citing, LaserDynamics, Inc. v. Quanta Computer*, Inc., 694 F.3d 51, 66 (Fed. Cir. 2012)). Although the patent claims in this case–involving the suspension of a riding lawnmower–are not particularly complicated, this court will assume, without deciding, that the damage analysis in this case could prove to be more complex than average. Nonetheless, I conclude that a stay of damages discovery is not warranted because of the overlap between certain liability and damages issues, and the prospect of vigorous disputes between the parties regarding where the line between discovery on those two areas should properly be drawn. Moreover, staying damages discovery would likely eliminate the possibility of an early settlement and would, if the District Judge ultimately decides to bifurcate for trial purposes, preclude a single, bifurcated trial before the same jury.

As Judge Kahn recognized in his prior opinion, the plaintiff may rebut defendants' contention that claim 39 of the 678 Patent is invalid because of obviousness by offering evidence of, *inter alia*, the "commercial success of the

patented invention." (Dkt. No. 70 at 15 (citations omitted)). Such evidence would need to establish a connection between the commercial success of plaintiffs' Ferris-branded lawnmowers and the particular invention reflected in claim 39. (Dkt. No. 70 at 23-24). As plaintiffs argue, discovery relating to commercial success would substantially overlap with discovery relating to damages, which also would be directed at trying to separate the value of particular patented features of the lawnmower's independent suspension from unpatented features of the mower. (Pls.' Ltr. Brf. at 8 (*citing, inter alia, Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2010 WL 3521567, at *2, 2010 U.S. Dist. LEXIS 98573, at *5 ("[D]amages and liability are not easily compartmentalized. For example, jurors may need to consider sales and financial records when deciding the liability issue of whether [plaintiff] has proven 'commercial success.' Such financial information is inherently intertwined with damages issues.")).

Defendants respond that, "in ordering bifurcation courts have recognized that the evidence needed to show commercial success is "less extensive and of a different character from that to prove damages." (Defs.' 10/4/2013 Ltr. Brf. at 8) (*citing, inter alia, Paine Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1116 (D. Del. 1984)). However, the cases relied upon by defendant involved circumstances where commercial success could apparently be demonstrated by analyzing sales and profit data with respect to the overall product embodying the patent(s). In this case, as Judge Kahn recognized (Dkt. No. 70 at 23-24), analysis of commercial success in this case requires a more particularized inquiry

into the contribution of a patented feature that is a relatively minor component of the overall product to the success of that product–a similar exercise required to do the damages analysis. If the court were to allow discovery regarding validity and commercial success while staying discovery with respect to damages, it would very likely become embroiled in disputes between the parties as to whether particular discovery requests permissibly related to the liability issues or improperly delved into damage issues. *Kimberly-Clark Worldwide*, 2010 WL 3521567, at *2, 2010 U.S. Dist. LEXIS 98573, at *5 ("[b]ifurcation would likely require the parties, and possibly this Court, to wade into the morass inherent in drawing lines between discovery relevant to damages and discovery relevant to liability").

Plaintiffs have specifically identified other areas in which discovery on liability and damages issues could overlap significantly (Pls.' Ltr. Brf. at 8-9), while defendants have contended, in fairly conclusory fashion, that plaintiffs overstate the extent of any such overlap (Defs' 10/28/2013 Ltr. Brf. at 1-2, Dkt. No. 77). In any event, the disagreement between the parties on the subject would likely contribute to other disputes regarding the proper scope of discovery, which would unnecessarily burden the parties and the court, and would delay pretrial proceedings. *See, e.g., BASF Catalysts LLC v. Aristo, Inc.*, 2:07-cv- 222, 2009 WL 523123, at *2, 2009 U.S. Dist. LEXIS 16263, at *5-6 (N.D. Ind. Mar. 2, 2009) ("many courts have noted that bifurcation can lead to additional discovery disputes that actually add time and costs to the litigation," including "extensive motion practice wrangling over whether certain pieces of discovery were applicable to the liability case or the willfulness/damages

case") (collecting cases); *Foseco, Inc. v. Consolidated Aluminum Corp.* 851 F. Supp. at 371 (if discovery on damages was stayed, "the court's time would be wastefully spent . . . in having to separate discovery objections which deal with damages and with liability").

Moreover, even if, as defendants claim, separate experts would address liability and damages issues, it seems likely that some fact witnesses from both sides would have information relevant to both areas. Requiring such witnesses possibly to submit to two rounds of discovery and trial testimony would be highly inefficient. See, e.g., *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2006 WL 2739678, at *5, 2006 U.S. Dist. LEXIS 97053, at *13 ("bifurcation is not suitable where the same witnesses may be required to testify at both stages, and where the evidence pertaining to the issues to be separately tried can reasonably be expected to overlap") (citations omitted); *Kimberly-Clark Worldwide*, 2010 WL 3521567, at *1, 2010 U.S. Dist. LEXIS 98573, at *4 (staying damages-related discovery and bifurcation would tend to cause unnecessary delay and expense and would not promote judicial economy; bifurcation would require two trials and two sets of discovery). As the court in *BASF* noted, "[p]ostponement does not equate with economy." *BASF Catalysts LLC v. Aristo, Inc.*, 2009 WL 523123, at *2, 2009 U.S. Dist. LEXIS 16263, at *5.

Delaying damages discovery until after the adjudication of liability issues would, during the first, lengthy stage of the proceedings, deprive the parties of critical information relevant to damages, which could preclude early settlement discussions and prevent the parties from litigating damage issues promptly after the resolution of

13

liability issues. If the presiding District Judge ultimately were ultimately to decide that bifurcation of liability and damage issues at trial was appropriate, staying discovery on damages would preclude the efficient option of having the same jury address liability and damages at one bifurcated trial. *See Foseco, Inc. v. Consolidated Aluminum Corp.* 851 F. Supp. at 371 (in the interest of judicial economy and expediency, the court would be better served by having parties informed by damages discovery before the start of trial; if the damages trial is required, then the parties will be prepared to continue before the same jury without interruption). Moreover, a lengthy stay of discovery about the nature and extent of damages could discourage the parties from engaging in settlement discussions during the early stages of the case. *Id.* (declining to stay damages discovery despite ordering a bifurcated trial so that the parties will be fully prepared to negotiate a settlement).

### C. Prejudice

In applying Fed. R. Civ. P. 42(b), the court must balance "two types of prejudices: first, the possible prejudice of jury confusion on complex issues if bifurcation is denied, and second, the prejudice of considerable delay resulting if bifurcation of liability and damages is granted." *BASF Catalysts LLC v. Aristo, Inc.*, 2009 WL 523123, at *2, 2009 U.S. Dist. LEXIS 16263, at *6-7 (*citing Real v. Bunn-O-Matic Corp.*, 195 F.R.D. at 621). "The first can be tempered with cautionary warnings, limiting instructions, special verdict forms, and other jury instructions, but the second only can be cured by denying bifurcation." *Id.*

Plaintiffs contend they will be prejudiced by the substantial delay in resolution

14

of this case if discovery and trial on damages must await resolution of liability issues. Defendants argue they will be prejudiced by the burden of engaging in extensive and complicated discovery involving damages if they ultimately prevail on liability issues. As discussed above, the court, at this stage of the proceedings, cannot conclude that plaintiffs' prospects of prevailing on some liability issues are so poor that the defendant should not be required to shoulder the usual burden in civil litigation of conducting discovery with respect to both liability and damage issues. While not discounting the possible complexity of damages discovery, this court has concluded that the requested stay would not promote the efficient and timely litigation of this case. Accordingly, I find that the defendants have not established that the alleged prejudice resulting from their obligation to conduct full discovery outweighs the prejudice to the plaintiff from waiting for two rounds of discovery and trial before their claims may be fully adjudicated.

At this early stage of the case, the court cannot conclude that a trial on liability and damages would foster jury confusion that would prejudice defendants. However, the defendants will have the opportunity to raise that issue again with the presiding District Judge, after full discovery helps the parties flesh out this issue.

Accordingly, it is hereby**:**

**ORDERED**, that, defendants' motion to stay discovery on damages issues (Dkt. No. 75) is **DENIED**. It is further

**ORDERED**, that defendants' motion to bifurcate liability and damage issues at

trial (Dkt. No. 75) is **DENIED WITHOUT PREJUDICE**.

Dated: November 7, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge