UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRIGGS & STRATTON CORPORATION,
*et al.*,

       Plaintiffs,

   -against-           5:13-cv-0316 (LEK/ATB)

CHONGQING RATO POWER CO., LTD.,
*et al.*,

       Defendants.

## **MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

This infringement action returns to the Court on Defendants Chongqing RATO Power Co., Ltd., RATO North America, and Denver Global Products, Inc.'s (collectively, "Defendants") Motion for reconsideration of the Court's Memorandum-Decision and Order filed September 30, 2014. Dkt. Nos. 113 ("Motion"); 113-1 ("Memorandum"). Specifically, Defendants seek reconsideration of the part of the Court's Order denying Defendants' Motion for summary judgment that the 1988 Yamaha Terrapro ("Terrapro") anticipates claims 1-6 and 10-12 of U.S. Patent No. 7,107,746 ("'746 Patent"). Mem. at 1. Plaintiffs Briggs & Stratton Corporation and Briggs & Stratton Power Products Group, LLC ("Plaintiffs") opposed the Motion, Defendants filed a reply, and Plaintiffs were further permitted to file a sur-reply. Dkt. Nos. 116 ("Response"); 119 ("Reply"); 122 ("Sur-Reply"). For the following reasons, Defendants' Motion is granted.

**II. BACKGROUND**

The Court briefly recounts the background and procedural history of this action necessary to the disposition of the present Motion. For further background on the case, reference is made to the

Court's September 30, 2014 Memorandum-Decision and Order. Dkt. No. 112 ("September Order").

Plaintiffs commenced this action on March 20, 2013, alleging that Defendants' production and distribution of the RAVEN lawn tractor (the "RAVEN") infringes U.S. Patent No. 6,510,678 ("'678 Patent") and the '746 Patent. Dkt. No. 1 ("Complaint"). The '678 Patent concerns a suspension system incorporating a "load compensation adjuster." '678 Patent. The '746 Patent refers to the front wheel connection assembly of a lawn mower incorporating the suspension system of the '678 Patent.[1] '746 Patent, Col. 3, Lns. 7-10.

---

[1] Claim 1 of the '746 Patent claims:

A mower, comprising:

a frame including

    a front portion;

    a rear portion; and

    at least one central longitudinal beam at least partially forming the front portion of the frame, the beam being substantially parallel with a longitudinal axis passing from the front portion to the rear portion of the frame; and

    first and second wheels positioned on opposite sides of the front portion of the frame and spaced to define a track width of the mower, the track width being a distance between a center portion of each of the first and second wheels, the first and second wheels being pivotably coupled to the at least one central longitudinal beam about a first longitudinal pivot axis and a second longitudinal pivot axis, respectively, for upward and downward movement independent of each other, the first and second longitudinal pivot axes being laterally spaced from the longitudinal axis between about 0% and about 20% of the track width.

'746 Patent, Col. 35, Ln. 54 to Col. 36, Ln. 7.

Claim 10 of the '746 Patent claims:

A method of assembling a mower, the method including:

2

Following discovery, the parties filed claim construction briefs and Defendants moved for summary judgment. In its September Order, the Court construed disputed claim terms. Sept. Order at 6-24. Significantly for the present Motion, the Court found that the preambles of Claims 1 and 10 of the '746 Patent—respectively, "a mower" and "a method of assembling a mower"—were not claim limitations. Id. at 23-24 (citing Am. Med. Sys., Inc. v. Biolitec, Inc., 618 F.3d 1354, 1358-59 (Fed. Cir. 2010)). The Court then granted in part and denied in part Defendants' Motion for summary judgment. See id. at 24-39. The Court granted summary judgment of invalidity on Claim 34 of the '678 Patent, and all of its dependent claims, for failure to provide a written description as required by 35 U.S.C. § 112. Id. at 33-35. The Court denied Defendants' Motion for summary judgment on the '746 Patent as either anticipated or obvious in light of two pieces of prior art: U.S. Patent No. 6,101,794 ("Christopherson") and the Terrapro. Id. at 35-39.

Yamaha's website identifies the Terrapro "as the first and only ATV with Power Take Off

---

providing a frame having a front end, a rear end, and opposite sides, the frame defining a longitudinal axis from the front end to the rear end;

providing toward the front end of the frame at least one central longitudinal beam substantially parallel with the longitudinal axis;

positioning a first wheel and a second wheel on opposite sides of the frame, respectively, toward the front end of the frame to define a track width between the first and second wheels, the track width being a distance between a center portion of each of the first and second wheels; and

pivotably coupling the first and second wheels to the at least one central longitudinal beam about a first longitudinal pivot axis and a second longitudinal pivot axis, respectively, for upward and downward movement independent of each other, the first and second longitudinal pivot axes being laterally spaced from the longitudinal axis between about 0% and about 20% of the track width.

Id., Col. 36, Ln. 51 to Col. 37, Ln. 5.

(PTO) capabilities. This feature enabled the use of a wide range of powered attachments (rough-cut mower, finish-cut mower, tiller, agricultural sprayers, post-hole digger and more)." Dkt. No. 85-3, Ex. KK. The only model year of the Terrapro was 1988. Dkt. No. 85-3, Ex. HH ("Starke Deposition"), 63:18-63:21. Defendants argued that their expert—Dr. Clark J. Radcliffe ("Radcliffe")—had analyzed a Terrapro model and concluded that the Terrapro disclosed every element of the '746 Patent. Dkt. Nos. 83-1 at 14; 84 ("Radcliffe Declaration") ¶¶ 67-70. The Court found that there was a question of material fact as to whether the Terrapro qualified as prior art. Sept. Order at 37-38. The Court determined that the relevant art for the purposes of the '746 Patent included both lawnmowers and suspension systems. Id. at 37. The Court found "a question of fact in whether one of ordinary skill in the lawnmower art would find the Terrapro to be prior art" because the Terrapro is not a lawnmower, but an all-terrain vehicle ("ATV") that can receive a lawnmower attachment. Id. at 37-38. Radcliffe admitted that he did not have experience in the design or analysis of lawnmowers, and the Court therefore found him "unqualified to determine what [was] and [was] not prior art in the art of lawnmowers. Id. at 38. Furthermore, Plaintiffs' experts had provided testimony that created an issue of material fact as to whether one of ordinary skill in the lawnmower art would recognize the Terrapro as prior art. Id.

Defendants moved for reconsideration of the Court's denial of summary judgment on anticipation of the '746 Patent by the Terrapro. Mem. at 1.

### III. LEGAL STANDARD

A motion for reconsideration may be granted where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers &

4

Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)) (internal quotation marks omitted). "The standard for granting a motion for reconsideration 'is strict and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Advanced Fiber Techs. Trust v. J&L Fiber Servs., Inc., 751 F. Supp. 2d 348, 382-83 (N.D.N.Y. 2010) (Kahn, J.) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "[R]econsideration 'should not be granted where the moving party seeks solely to relitigate an issue already decided.'" Id. at 383 (quoting Shrader, 70 F.3d at 257).

## IV. DISCUSSION

### A. September Order

Defendants assert that the Court committed clear error in denying their Motion for summary judgment on the issue of anticipation of the '746 Patent by the Terrapro. Mem. at 1. On summary judgment, Defendants argued that the Terrapro anticipated the asserted claims of the '746 Patent pursuant to 35 U.S.C. § 102(b). Dkt. No. 83-1 at 1. The Court found there was "a question of fact in whether one of ordinary skill in the lawnmower art would find the Terrapro to be prior art." Sept. Order at 37-38. Defendants argue that the Court's finding was clear error because: (1) Plaintiffs do not dispute that the Terrapro qualifies as prior art under 35 U.S.C. § 102(b), and (2) "whether a prior art reference qualifies as 'relevant art' as the Court sought to determine . . . is not legally part of the anticipation inquiry." Mem. at 2. Defendants state that "[t]he law is clear that 'the question of whether a reference is analogous art is irrelevant to whether that reference anticipates.'" Id. (quoting In re Schreiber, 128 F.3d 1473, 1478 (Fed. Cir. 1997)). Defendants argue that the Court

5

erroneously relied on the obviousness standard, which requires a court to determine the relevant art. Id. at 3. Defendants contend that "the sole inquiry for purposes of anticipation is whether the [Terrapro] 'explicitly or inherently discloses every limitation disclosed in the claims.'" Id. (quoting In re Schreiber, 128 F.3d at 1478).

Plaintiffs dispute Defendants' assertion that the field of endeavor is irrelevant to the anticipation inquiry. Resp. at 2. Plaintiffs contend that a reference is anticipatory where it: (1) discloses each and every claim limitation, and (2) "enables one of skill in the art to practice an embodiment of the claimed invention without undue experimentation." Id. (quoting Stored Value Solutions, Inc. v. Card Activation Techs., Inc., 499 F. App'x 5, 14 (Fed. Cir. 2012)). Plaintiffs argue that Defendants have ignored the second part of the anticipation standard, which requires a court to determine the relevant field of art. Id. Plaintiffs therefore argue that the Court did not commit error in determining the relevant field of art for the '746 Patent. Id. at 5-6.

The issue is therefore whether the Court was correct to address the relevant art in considering anticipation of the '746 Patent by the Terrapro. Based on the precedents identified by Defendants, the Court finds that it applied the incorrect standard in the September Order. See Shrader, 70 F.3d at 257 ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."). Specifically, the Court finds that determining the relevant art is not part of the anticipation inquiry under the public use and on-sale bars of § 102(b). The Court's discussion of § 102(b) follows.

Section 102 directs that:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described

6

in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in a public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . .

35 U.S.C. § 102. Defendants assert anticipation under § 102(b) because "the Terrapro was on sale in the United States more than one year before the '746 [P]atent's July 30, 2004 priority date."[2] Dkt. No. 83-1 at 6-7.

"[A] claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference." Celeritas Techs., Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1360 (Fed. Cir. 1998); see also Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier.").

While Plaintiffs are generally correct that "[t]o anticipate, the reference must also enable one of skill in the art to make and use the claimed invention," see, e.g., Bristol-Myers Squibb, 246 F.3d

---

[2] The Federal Circuit has noted that both the "on-sale" and "public use" bars of § 102(b) stem from a similar "reluctance to allow an inventor to remove existing knowledge from public use." See Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1389 (Fed. Cir. 2005) (quoting Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 64 (1998)) (internal quotation marks omitted); see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 148 (1989) ("[T]he public sale of an unpatented article has acted as a complete bar to federal protection of the idea embodied in the article thus placed in public commerce."). Nonetheless, the Federal Circuit has also noted that the "public use" and "on-sale" bars "are grounded on different policy emphases." Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc., 141 F.3d 1073, 1079 (Fed. Cir. 1998). "The primary policy underlying the 'public use' case is that of detrimental public reliance, whereas the primary policy underlying the 'on-sale' case is that of prohibiting commercial exploitation of the design beyond the statutorily prescribed time period." Id.; cf. 2 R. Carl Moy, Moy's Walker on Patents § 8.21 (4th ed.) (noting different policies of "public use" and "on-sale" bars, but also observing that courts tend to employ the terms interchangeably). Defendants have not distinguished between the "on-sale" and "public use" bars. See Mem. at 2.

at 1374, anticipation by a "public use" or "on-sale" prior art reference under § 102(b) need not be enabling, see, e.g., Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc., 522 F.3d 1348, 1356 (Fed. Cir. 2008) (quoting In re Epstein, 32 F.3d 1559, 1568 (Fed. Cir. 1994) ("Beyond this 'in public use or on sale' finding, there is no requirement for an enablement-type inquiry."))[3] "[I]t is the claims that define a patented invention." Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1570 (Fed. Cir. 1997). The "public use" or "on-sale" inquiry "is not whether the sale, even a third party sale, 'discloses' the invention at the time of the sale, but whether the sale relates to a device that *embodies* the invention." J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577, 1583 (Fed. Cir. 1986) (emphasis in original). "Section 102(b) may bar patentability by anticipation if the device used in public includes every limitation of the later claimed invention." Netscape Commc'ns Corp. v. Konrad, 296 F.3d 1315, 1321 (Fed. Cir. 2002).[4]

The Court therefore finds that it erred in considering the relevant art in addressing anticipation by the Terrapro prior art. Because Defendants assert anticipation under the "public use" and "on-sale" bars of § 102(b), it is unnecessary to determine the relevant art. Rather, the Court must determine whether the Terrapro (1) was either used in public or offered for sale more than one year prior to the '746 Patent application, and (2) contains every limitation of the asserted claims of

---

[3] Printed art prior publications, by contrast, "must be enabling, thus placing the allegedly disclosed matter in the possession of the public." In re Epstein, 32 F.3d at 1568.

[4] Furthermore, "[t]he section 102(b) 'public use' and 'on sale' bars are not limited to sales or uses by the inventor or one under the inventor's control, but may result from activities of a third party which anticipate the invention." In re Epstein, 32 F.3d at 1564; see also Zenith Elecs., 522 F.3d at 1356-60 (affirming anticipation by public use of unrelated third party device); Pixion, Inc. v. Citrix Sys., Inc., 887 F. Supp. 2d 881 (N.D. Cal. 2012) (finding anticipation by public use of unrelated third party videoconferencing system); Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc., 87 F. Supp. 2d 258, 263-64 (S.D.N.Y. 2000) (considering anticipation by public use of unrelated third party software program).

the '746 Patent. See Zenith Elecs., 522 F.3d at 1356. "Whether a patent is invalid for a public use or sale is a question of law based on underlying facts." Netscape Commc'ns, 295 F.3d at 1320 (citing Intel Corp. v. Int'l Trade Comm'n, 946 F.2d 821, 829 (Fed. Cir. 1991)). A court may grant summary judgment of anticipation only if there is no genuine issue of material fact. Trintec Indus., Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1294 (Fed. Cir. 2002). A patent is presumed valid, 35 U.S.C. § 282, and the party asserting invalidity must prove it by clear and convincing evidence, Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 549 (Fed. Cir. 1990).

### B. Public Use/On-Sale Bars

An inventor is barred from obtaining a patent under § 102(b) where the invention was (1) either in public use or offered for sale, and (2) ready for patenting, more than one-year prior to the date of the patent application. Invitrogen, 424 F.3d at 1379 (citing Pfaff, 525 U.S. 55).

An invention is in public use when it is was either (1) publicly accessible or (2) commercially exploited. Id. at 1380. "[T]he test of the public use prong includes the consideration of evidence relevant to experimentation, as well as, *inter alia*, the nature of the activity that occurred in the public; public access to the use; confidentiality obligations imposed on members of the public who observed the use; and commercial exploitation." Id. (citing Allied Colloids, Inc. v. Am. Cyanamid Co., 64 F.3d 1570, 1574 (Fed. Cir. 1995)). "Public use includes 'any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor.'" Petrolite Corp. v. Baker Hughes Inc., 96 F.3d 1423, 1425 (Fed. Cir. 1996) (quoting In re Smith, 714 F.2d 1127, 1134 (Fed. Cir. 1983)) (alteration in original). A "commercial offer for sale" occurs where the offer rises to "the level of an offer for sale in the contract sense." Grp. One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1046. "Only an offer . . . which the other

9

party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." Id. at 1048.

An invention is "ready for patenting" where, before the critical date, there was either (1) proof of reduction to practice or (2) proof of drawings or other descriptions sufficiently specific to enable a person skilled in the art to practice the invention. Pfaff, 525 U.S. at 67-68. "An invention is reduced to practice . . . [where] an embodiment . . . meets every limitation and operates for its intended purpose." Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 488 F.3d 982, 997 (Fed. Cir. 2007). "An invention works for its intended purpose when there is a demonstration of the workability or utility of the claimed invention." Id. (citing Fujikawa v. Wattanasin, 93 F.3d 1559, 1563 (Fed. Cir. 1996)).

The '746 Patent application was filed on July 30, 2004, '746 Patent, and therefore has a critical date of July 30, 2003. See Orion IP, LLC v. Hyundai Motor Am., 605 F.3d 967, 974 (Fed. Cir. 2010) ("The critical date is defined as the date one year prior to the filing date of the patent application."). Defendants assert that it is undisputed that the Terrapro is prior art because Plaintiffs did not dispute their statement that "[t]he [Terrapro] with FM-48 finish mower attachment was on sale more than one year before July 30, 2004, and qualifies as prior art to the '746 [P]atent under 35 U.S.C. § 102(b)." Mem. at 2; compare Dkt. No. 83-2 ¶ 2, with Dkt. No. 93-1 ¶ 2. Plaintiffs therefore have not contested that the Terrapro qualifies as public use prior art under § 102(b). See generally Dkt. No. 93.

The Court finds there is no genuine issue of material fact with respect to the public use and operability of the Terrapro prior to the critical date. Yamaha produced only one model year—1988 —of the Terrapro. Starke Dep. at 63:18-63:21. Defendants have introduced as exhibits sales and

registration records for the Terrapro and its attachments—including mower attachments—in the United States. Matthew Jorgenson Declaration, Exs. 1-2.[5] Those records indicate thousands of sales and registrations of Terrapros and mower attachments. See id. The records are sufficient to demonstrate that the Terrapro was commercially available, and therefore in public use, prior to the critical date. See Invitrogen, 424 F.3d at 1380. Defendants also introduced numerous screenshots from Yamaha's website, indicating the model year of the Terrapro, Dkt. No. 85-3, Ex. JJ, describing the Terrapro's features, Dkt. No. 85-3, Ex. KK, and containing pictures of the Terrapro in use, Dkt. No. 85-3, Ex. LL, and parts information for the Terrapro, Dkt. No. 85-4, Exs. MM to OO. Defendants purchased a used Terrapro, with an FM-48 finished mower attachment, Dkt. No. 85-3, Ex. AA, including operator manuals for both the Terrapro and the FM-48 attachment, Dkt. Nos. 85-2, Ex. Y; 85-3, Ex. Z. Radcliffe, Defendants' expert, inspected the Terrapro model purchased by Defendants and concluded that it was the same as what is depicted in the product manuals and the photographs on Yahama's website. Radcliffe Decl. ¶ 68. Plaintiffs have not disputed that the Terrapro was commercially available and in public use prior to the critical date. See Dkt. No. 93-1 ¶ 2. The Court therefore finds that the Defendants have met their burden of demonstrating that the Terrapro and its mower attachments were on sale and in public use more than one year prior to the critical date. See Zenith Elecs., 522 F.3d at 1357 (finding no genuine issue of material fact as to whether prior art was in public use on basis of witness testimony, documentary evidence, patentee's

---

[5] The deposition testimony and records related to Yamaha's sales figures for the Terrapro were filed with the Court under seal pursuant to the Court's Protective Order for confidential materials. See Dkt. No. 72.

admissions).[6]

    **C. Anticipation**

The Court must next determine whether the Terrapro contains every limitation of the asserted claims of the '746 Patent. See Netscape Commc'ns, 295 F.3d at 1321. Defendants assert that it is undisputed "that the Terrapro discloses every limitation recited in" the asserted claims because the only element that Plaintiffs had contended was absent from the reference was a "mower," and the Court determined in its September Order that the "mower" recited in the preambles of claims one and ten was not a claim limitation. Mem. at 3-4 (citing Sept. Order at 23-24). Plaintiffs argue in response that the Court's ruling that the claim preambles were not limiting does not apply to the recitation of "mower" in the body of the asserted claims. Resp. at 1-2. Plaintiffs argue that the recitation of "mower" in the claim body *is* a limitation and that the Court has already found a material issue of fact as to whether one of ordinary skill in the lawnmower art would find the Terrapro prior art. Id. Plaintiffs also dispute whether the Terrapro discloses the "coupled" limitation in dependent claim six. See Dkt. No. 93 at 18-20.

    *1. "Mower"*

The body of claim one recites "first and second wheels positioned on opposite sides of the front portion of the frame and spaced to define a track width of the *mower*." '746 Patent, Col. 35,

---

    [6] Plaintiffs have also argued that "[w]hen a third party (non-inventor) sells a product more than one year before the filing date, it does not invalidate a method-of-manufacture claim unless the method is ascertainable from the product itself." Sur-Reply at 4. Plaintiffs therefore assert that there are issues of material fact as to whether the public use of the Terrapro disclosed method of manufacture claims 10-12. Id. However, Plaintiffs do not correctly state the law; again, a public use need not be enabling. See Netscape Commc'ns, 295 F.3d at 1323. Courts apply this principle even where a third-party has placed the claimed invention into the public's possession. See Zenith Elecs., 522 F.3d at 1356. It is enough that a public use "place the *claimed* features of [a patent] in the public's possession." Lockwood, 107 F.3d at 1570.

12

lns. 63-65 (emphasis added). Plaintiffs assert that "mower," as recited in the body of claim one, is a limitation. Sur-Reply at 1. Defendants contend that "mower" is not a claim limitation and is only a reference point that provides guidance in interpreting the claim. Reply at 4-5. The Court agrees with Defendants.

Defendants cite several cases which they claim indicate that terms in the body of a claim that merely provide a reference point are not claim limitations. Id. at 5 (citing C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1350 (Fed. Cir. 1998); Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 879-80 (Fed. Cir. 1991); Ride & Show Eng'g, Inc. v. Walt Disney Parks & Resorts, L.L.C., No. CV 03-6895, 2005 WL 6220490, at *5-14 (C.D. Cal. Sept. 22, 2005)).

In Vaupel, the patent-at-issue disclosed a method and apparatus for weaving and cutting fabric into woven garment labels. 944 F.2d at 872. The preamble of one claim stated "[a] method of forming a plurality of patterned strips of fabric woven from threads of synthetic material using a broad weaving machine having a sley and a *breast beam*." Id. (emphasis added). The preamble to the apparatus claim stated an improvement to "a broad fabric weaving machine having a sley and a *breast plate*." Id. (emphasis added). The body of each claim referred back respectively to the "breast beam" and the "breast plate." See id. at 872 ("[G]uiding the woven fabric leaving the position where the sley beats up the fabric to allow movement *towards the breast beam*."); 873 ("[A] fabric guiding station extending across the width of said machine at the output from the machine where the sley beats up the fabric and *ahead of the breast plate*."). The defendants argued that "breast beam" and "breast plate" were claim limitations "requir[ing] a specific loom part." Id. at 879. The court of appeals disagreed, finding that "breast plate" and "breast beam" "indicate[d] a reference point to fix the direction of movement of the woven fabric from the loom." Id. at 880.

13

In C.R. Bard, the patented invention was a device for taking tissue samples for biopsy purposes. 157 F.3d at 1346. The preamble to the asserted claim recited "[a] biopsy needle for use with a tissue sampling device having *a housing* with a forward end, a first slide mounted for longitudinal motion within *said housing*, and a second slide mounted for longitudinal motion within *said housing*." Id. at 1348-49 (emphasis added). The body of the claim referred back to the "housing": "a first head mounted to said proximal end of said hollow first needle and said head including first flange means associated therewith for coupling said hollow first needle to said first slide for longitudinal motion both toward and away from said forward end of *said housing*." Id. at 1349 (emphasis added). The court of appeals, considering whether "housing" was a claim limitation, found that it merely "provide[d] reference points in the gun that aid in defining the needles as set forth in the body of the claim." Id. at 1350; see also id. (stating that the preamble in Vaupel "described a 'reference point' that provided guidance in understanding and construing the claim").

Both the Vaupel and C.R. Bard courts found that preamble terms were not limiting where they merely aided in understanding the claimed structures. In the present case, the Court finds that the recitation of "the mower" in the claim body—"a track width of the mower"—is similarly a reference point to understand the claimed structures. The Court has already determined that the recitation of "a mower" in the preamble is not a claim limitation because "the mere recitation that the vehicle is a 'mower' does not otherwise render the description of the claimed invention not whole." Sept. Order at 24. This same reasoning applies equally to the recitation of "the mower" in the claim body, which is merely a reference back to the recitation of "a mower" in the preamble. Moreover, the claimed structures are the "*first and second wheels* positioned on opposite sides of

the front portion of the frame and spaced to define a track width of the mower." '746 Patent, Col. 35, lns. 63-65 (emphasis added). "The mower" is only recited as a reference point for how the claimed "first and second wheels" are "spaced to define a track width." The fact that the vehicle is recited as a "mower" does not, as the Court has stated, "otherwise render the description of the claimed invention not whole." Sept. Order at 24.

The Court is not persuaded by Plaintiffs' arguments to the contrary. Plaintiffs argue that Vaupel and C.R. Bard are inapplicable because the recitation of "the mower" in the claim body is not merely a reference point, but is the "structure that is claimed." Sur-Reply at 1. Plaintiffs state that the "plain language of the claim" uses "the term 'track width' to describe a feature of the 'mower'—the track width is just a measurement; the mower is the structure." Id. at 2.

Plaintiffs cite to a district court case in support of their argument. Id. (citing HSM Portfolio LLC v. Fujitsu Ltd., No. 11-770, 2014 WL 2754734 (D. Del. June 17, 2014)). In HSM Portfolio, the district court considered whether recitations of "bit lines" in the preamble and the claim body were limiting. 2014 WL 2754734, at *4-6. The preamble recited a circuit "for sensing signals on *first and second bit lines* of a memory," and the claim body recited the "first and second bit lines of a memory" and "the first bit line being connected to the first input of the first inverter and second bit line being connected to the first input of said second inverter." Id. (emphasis added). The court found that the preamble was not limiting because it was "not necessary to give meaning to the claims." Id. at *5. The court, however, found that the recitation of "bit lines" in the claim body was limiting because, unlike in Vaupel and C.R. Bard, "bit lines" was not used as a reference point to orient elements of the claim. Id. at *6. Rather, the claim required them to be "present and connected to circuit." Id. In reliance on HSM Portfolio, Plaintiffs contend that Vaupel and C.R.

15

Bard are distinguishable from the present case because unlike the "housing" or "breast plate," the reference to "the mower" is not used to orient the movement of other claim elements. Sur-Reply at 3.

Plaintiffs are correct that the present case is not directly analogous to Vaupel and C.R. Bard. In C.R. Bard, the claim described "longitudinal motion both *toward* and *away from* said forward end of said housing." 157 F.3d at 1349 (emphasis added). In Vaupel, the claim described "movement *towards* the breast beam." 944 F.2d at 872 (emphasis added). In the present case, the reference to "the mower" is not being used to orient the movement of other claim elements. Nonetheless, the reference *is* being used for orientation; namely, the reference orients the spacing of the wheels. The wheels are "spaced to define a track width of the mower." '746 Patent, Col. 35, lns. 63-65. Furthermore, HSM Portfolio is inapposite because the "bit lines" in that case were separate claim structures that were acted upon and connected to other structures. See 2014 WL 27454734, at *6 ("[T]he first bit line being connected to the first input of the first inverter and the second bit line being connected to the first input of the second inverter."). "The mower," by contrast, is not a separate claim structure, but again, is merely referred to in order to orient other claim structures. See Sept. Order at 24. The Court therefore finds that "the mower" is not a claim limitation.

2. "Coupled"

Plaintiffs disputed that the Terrapro contained the "coupled" limitation of dependant claim six—"[t]he mower of claim 1 comprising a cutter deck coupled to the frame," '746 Patent, Col. 36, lns. 26-27—because "[t]he FM-48 attachment is not coupled to the Terrapro ATV's frame . . . [but] to the rear axle." Dkt. No. 93-1 ¶ 31. The FM-48, therefore, "follows the movement of the rear

16

axle, not the frame." Id.

However, Plaintiffs' argument is no longer viable in light of the Court's claim construction. In its claim construction, the Court construed the recitation of "coupling the cutter deck to the main frame" in claim 34 of the '678 Patent, Sept. Order at 15-17, which is incorporated by reference in the '746 Patent, '746 Patent, Col. 1, lns. 6-30.[7] The federal circuit has stated a presumption that "unless otherwise compelled . . . the same claim term in the same patent or related patents carries the same construed meaning." Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1334 (Fed. Cir. 2003). The '678 Patent recites "coupling the cutter deck to the main frame," '678 Patent, Col. 12, ln. 6; claim 6 of the '746 Patent recites "a cutter deck coupled to the frame," '746 Patent, Col. 36, lns. 26-27. Plaintiffs have not suggested that "coupled" in the '746 Patent should be construed differently than "coupling" in the '678 Patent. See generally Resp.; Sur-Reply. Accordingly, the Court adopts its construction of "coupling" in the '678 Patent for "coupled" in the '746 Patent.

The Court construed "coupling" not to require a direct linkage, and to mean "no more than 'linked together, connected or joined.'" Sept. Order at 16-17. Plaintiffs do not dispute that the FM-48 attachment is "pivotably coupled" to the Terrapro's frame. Dkt. No. 93 at 20. Therefore, it follows that the FM-48 is "linked together, connected or joined" to the frame. Thus, there is no genuine issue of material fact as to whether the Terrapro discloses the "coupled" limitation.

   3. *Summary*

The only elements of the asserted claims of the '746 Patent which Plaintiffs contended were not disclosed by the Terrapro were a "mower" and the "coupled" limitation of claim six. See Dkt.

---

[7] The parties did not dispute the meaning of "coupled" in the '746 Patent. See Dkt. No. 81-1 ("Joint Claim Construction Statement").

17

No. 93-1 ¶¶ 21-36. The Court, however, has found that "mower" is a not a claim limitation and that there is no issue of material fact as to whether the Terrapro discloses the "coupled" limitation. Therefore, there is no issue of material fact as to whether the Terrapro discloses each element of the asserted claims of the '746 Patent, and accordingly anticipates those claims. Compare Dkt. No. 83-2 ¶¶ 21-37 with Dkt. No. 93-1 ¶¶ 21-36.

**V.     CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants Chongqing RATO Power Co., Ltd., RATO North America, and Denver Global Products, Inc.'s Motion (Dkt. No. 113) for reconsideration is **GRANTED**; and it is further

**ORDERED**, that claims 1-6 and 10-12 of the '746 Patent are **INVALID** pursuant to 35 U.S.C. § 102(b); and it is further

**ORDERED**, that Plaintiffs Briggs & Stratton Corporation and Briggs & Stratton Power Products Group, LLC's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     July 30, 2015
           Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge